UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re:<br><br>THE ALIERA COMPANIES, INC.<br>d/b/a Aliera Healthcare, Inc., *et al.*,[1]<br><br>Debtors. | **Case No. 21-11548 (TMH)**<br>Currently pending in the U.S. Bankruptcy<br>Court for the District of Delaware |
| ALIERA LT, LLC, AS LIQUIDATING<br>TRUSTEE FOR THE ALIERA<br>COMPANIES, INC. d/b/a ALIERA<br>HEALTHCARE INC., *et al.*, and NEIL F.<br>LURIA, IN HIS CAPACITY AS THE<br>TRUSTEE OF THE SHARITY<br>MINISTRIES, INC. LIQUIDATING<br>TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN MEDICAL PLANS, LLC and<br>THOMAS FERGUSON,<br><br>Defendants. | <br><br><br><br><br><br><br><br>**Adversary Proceeding No**. 24-05031-JRS |

## DEFENDANTS' MOTION TO DISMISS

Defendants American Medical Plans, LLC and Thomas Ferguson (collectively, the

"**Defendants**"), pursuant to Fed. R. Civ. P. 12(b)(6) incorporated by Fed. R. Bankr. P. 7001, 7002,

and 7012, by and through undersigned counsel, files this motion to dismiss all counts of the

*Amended Complaint* [ECF No. 7] filed by the Plaintiffs Aliera LT, LLC, as Liquidating Trustee

(the "**Trustee**") and Neil F. Luria, in his capacity as the Trustee of the Sharity Ministries, Inc.

Liquidating Trust (the "**Sharity Trustee**").  The arguments in support of this Motion are set forth

---

[1] The jointly administered Debtors in these Chapter 11 cases along with the last four digits of their federal tax identification number include: The Aliera Companies Inc. (9555) (Case No. 21-11548), Advevo LLC (6736) (Case No. 22-10124), Ensurian Agency LLC (3244) (Case No. 22-10123), Tactic Edge Solutions LLC (2923) (Case No. 22-10122) and USA Benefits & Administrators LLC (5803) (Case No. 22-10121).

1

in the accompanying Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint ("**Memorandum**"). Pursuant to Federal Rule of Bankruptcy Procedure 7012(b), Defendants consent to entry of final orders or judgment by this Court.

**WHEREFORE,** Defendants respectfully requests that this Honorable Court enter an Order: (i) granting this Motion; (ii) dismissing all Counts in the Amended Complaint with prejudice; (iii) alternatively, with respect to Counts I-V only, if dismissal is not warranted, then requiring the Plaintiffs to provide a more definite statement; and (iv) granting the Defendants such other and further relief as this Court deems just and proper.

Dated: April 24, 2024
Boca Raton, Florida

*/s/ Robert C. Furr*
ROBERT C. FURR
FurrCohen, PA
2255 Glades Road, Suite 419A
Boca Raton, FL 33431
Telephone: (561) 417-1563
Email: rfurr@furrcohen.com
*Counsel for the Defendants*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re:<br><br>THE ALIERA COMPANIES, INC.<br>d/b/a Aliera Healthcare, Inc., *et al.*,[2]<br><br>Debtors. | **Case No. 21-11548 (TMH)**<br>Currently pending in the U.S. Bankruptcy<br>Court for the District of Delaware |
| ALIERA LT, LLC, AS LIQUIDATING<br>TRUSTEE FOR THE ALIERA<br>COMPANIES, INC. d/b/a ALIERA<br>HEALTHCARE INC., *et al*., and NEIL F.<br>LURIA, IN HIS CAPACITY AS THE<br>TRUSTEE OF THE SHARITY<br>MINISTRIES, INC. LIQUIDATING<br>TRUST,<br><br>                    Plaintiffs,<br><br>v.<br><br>AMERICAN MEDICAL PLANS, LLC and<br>THOMAS FERGUSON,<br><br>                    Defendants. | **Adversary Proceeding No**. 24-05031-JRS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants American Medical Plans, LLC and Thomas Ferguson (collectively, the

"**Defendants**"), by and through undersigned counsel, submits this Memorandum of Law in

Support of Defendant's Motion to Dismiss Plaintiffs' Amended Complaint. For the reasons that

follow, the Trustee cannot state a claim for relief for voidable transactions under Georgia's

Voidable Transactions Act (Counts I through V), breach of fiduciary duty (Count VI), aiding and

abetting breach of fiduciary duty (Count VII), or civil conspiracy (Count VIII) and The Sharity

---

[2] The jointly administered Debtors in these Chapter 11 cases along with the last four digits of their federal tax identification number include: The Aliera Companies Inc. (9555) (Case No. 21-11548), Advevo LLC (6736) (Case No. 22-10124), Ensurian Agency LLC (3244) (Case No. 22-10123), Tactic Edge Solutions LLC (2923) (Case No. 22-10122) and USA Benefits & Administrators LLC (5803) (Case No. 22-10121).

3

Trustee cannot state a claim for relief under Georgia's RICO statute (Count IX). Finally, the Amended Complaint does not allege the conduct required for imposition of the punitive damages requested by the Trustees in their prayer for relief.

I.    **Standard for Dismissal under Fed. R. Civ. P. 12(b)(6)**

1.      Fed. R. Civ. P. 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) made applicable to bankruptcy by Fed. R. Bankr. P. 7012. "To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1264 (11th Cir. 2011) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)).

2.      "Stating a 'plausible' claim for relief requires pleading factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 1264-65.

3.      "A complaint is also subject to dismissal [for failure to state a claim] when its allegations—on their face—show that an affirmative defense bars recovery on the claim." *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc) *abrogated on other grounds by Twombly*, 550 U.S. at 561-63. *Accord Watkins v. O'Brien*, 808 Fed. Appx. 1021, 1022-23 (11th Cir., June 3, 2020) (dismissing where the claim is barred by statute of limitations).

4.      "In ruling on a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *Speaker v. United States HHS CDC & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (citation omitted).

5.      The "formulaic recitation of the elements of a cause of action will not do" and "a legal conclusion couched as a factual obligation" is not entitled to a presumption of truth against a motion to dismiss." Twombly, 550 U.S. at 555.  *See also Newbauer v. Carnival Corp.*, 26 F.4th 931, 934-35 (11th Cir. 2022) ("When evaluating a motion to dismiss, the first step is to 'eliminate any allegations in the complaint that are merely legal conclusions.' The second step is to assume the veracity of well-pleaded factual allegations and 'then determine whether they plausibly give rise to an entitlement to relief.'") (internal citations omitted)).

## II.     The Georgia RICO Claim in Count VIII Should be Dismissed with Prejudice on the Grounds of In Pari Delicto, Lack of an Injury to Sharity, and No Predicate Offenses

6.      The Amended Complaint does not cure or state a plausible claim for relief and demonstrates the futility the Sharity Trustee's continued attempts to amend the complaint to seek relief under Georgia's Civil RICO Statute.

7.      There is a fundamental problem with the Sharity Trustee's claim that can never be cured; Sharity is not the party injured by the bad acts in which it was engaging.

### a.   Sharity Trustee Lacks Standing

8.      The Sharity Trustee lacks standing.  The Sharity Trustee's added allegations only further support this position.  To the extent any injury was suffered from the marketing of Sharity's plans, the Members are proper parties, not Sharity and consequently not the Sharity Trustee.

9.      When standing is contested, it is the plaintiff's burden "to plead and prove injury in fact, causation, and redressability." *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 984 (11th Cir. 1990) (quotations omitted); *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1307, n.8 (11th Cir. 2020).

10.     The Eleventh Circuit just issued its opinion in *Wiand v. Atc Brokers Ltd.*, Case No. 22-13658, --F.4th --, 2024 U.S. App. LEXIS 6547 (11th Cir. Mar. 19, 2024), summarizing and

reiterating this Circuit's "controlling" case law stating that a receiver (and bankruptcy trustee) lacked standing to pursue such tort claims because the Ponzi torts are imputed to the receiver (or bankruptcy trustee). *Id*. at *13 (citing *Isiah*, 960 F.3d at 1306).

11.     "A trustee, as the representative of the estate, succeeds into the rights of the debtor-in-bankruptcy and has standing to bring any suit that the debtor corporation could have brought outside of bankruptcy." *Off. Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1149 (11th Cir. 2006).

12.     Bankruptcy trustees "cannot pursue claims owned directly by the creditors," but instead are "limited to bringing only those actions previously owned by" the bankruptcy debtors. *Isaiah*, 960 F.3d at 1306; *E.F. Hutton & Co.*, 901 F.2d at 985; *see Post-Confirmation Comm. for Small Loans, Inc. v. Martin*, 1:13-CV-195 (WLS), 2016 WL 632482, at *4 (M.D. Ga. Feb. 17, 2016) ("These allegations describe harm suffered directly by the Investors and creditors of the Debtors, as opposed to harm suffered by the Debtors. Such allegations, under longstanding Georgia law, cannot be assigned to or asserted by individuals or entities other than the individual harmed by the alleged fraudulent conduct."). *See also Gordon v. Harman (In re Harman)*, 520 B.R. 906, 909-912 (Bankr. N.D. Ga. 2014) (holding that a trustee lacks standing to sue third parties on behalf of the debtor's creditors, even where a claim is generalized as to all creditors or a class of creditors) (*citing Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 428-34, 92 S.Ct. 1678, 1685-88, 32 L.Ed.2d 195 (1972) (which held that a bankruptcy trustee does not have authority to prosecute a cause of action that Debtor could not have brought himself); *Mukamal v. GE Capital Corp. (In re Palm Beach Finance Partners, L.P.)*, 568 B.R. 874, 885-890 (Bankr. S.D. Fla. 2017) (collecting cases and holding that "a debtor's bankruptcy trustee has no standing or authority under the Bankruptcy Code, particularly under either 11 U.S.C. §§ 541 or 544(a), to

pursue a cause of action against a third party when the third party's alleged conduct harmed the creditors of the debtor but did not harm the debtor itself.").

13.    The allegations of the Amended Complaint are that the Members were injured by the fraud perpetrated by or through Sharity and the Debtors.  *See Amended Complaint*, p. 3, ¶ 5 ("Aliera's insiders and its insurance agents, including the Defendant, perpetrated **a fraudulent scheme** by (1) accepting fees and commissions well in excess of industry norms and often exceeding the true value of the HCSM plans; (2) misrepresenting the nature and accuracy of the HCSM plans; and (3) misrepresenting to the Members that they were covered by a valid policy that would be able to cover their claims and medical expenses.") (emphasis added)).

14.    In *Wiand*, the Eleventh Circuit stated:

> The crux of the standing inquiry is whether the receivership estate—the Oasis corporate entity— was "separate and distinct" from the Ponzi scheme. *Id.*; *see also Perlman*, 38 F.4th at 901 ("Entities must have 'at least one innocent officer or director' and thus be 'honest corporations' for standing purposes." (*quoting Isaiah*, 960 F.3d at 1308)). If Oasis was an "honest corporation with rogue employees," the corporate entity can complain that it was injured by the torts of rogue insiders and their accomplices. *Isaiah*, 960 F.3d at 1307 (citation and internal quotation marks omitted). But if Oasis was "a sham corporation created as the centerpiece of a Ponzi scheme," the corporate entity could not have suffered any injury from its own fraudulent scheme, and Wiand, as receiver, lacks standing to maintain the tort claims. *Id.* (citation and internal quotation marks omitted); *see also O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1203 (11th Cir. 2003) ("[A receivership estate] whose primary existence was as a perpetrator of the Ponzi scheme, cannot be said to have suffered injury from the scheme it perpetrated.").

2024 U.S. App. LEXIS 6547 at *14-15.  The throughline of the Amended Complaint, and the story of Sharity (its predecessors) and the Debtors, is that Moses, Steele, and Chase created each entity, completely dominated them, and kept tight controls over all aspects of the operations of each to allow the Insiders to loot the Members funds undetected.   Neither Sharity or Debtors is a victim, collectively they are the "centerpieces" of the Insiders scheme and therefore, the Trustee and

Sharity Trustee lack standing to bring any tort claims. *See Wiand*, 2024 U.S. App. LEXIS 6547 at *14-15.

15.     According to the Amended Complaint, Moses, Steele, and Chase wholly dominated Sharity, which was used to perpetrate a fraud on the Members. *See Amended Complaint*, p. 2, ¶ 2 ("Sharity was an entity effectively controlled by and ultimately looted by Moses, Steele, and Chase…"); pp. 8-9, ¶ 26 ("Aliera and its principals therefore helped form [Trinity n/k/a Sharity] on June 27, 2018, as a purported Delaware nonprofit entity."); p. 9, ¶ 27 ("William Rip Thead, III became the CEO of Trinity. Mr. Thead was an Aliera employee at the time it created Trinity."); ¶ 29 ("The 2018 Agreement was drafted to benefit the Insiders [Moses, Steele, and Chase]"); p. 18, ¶ 60 (alleging Aliera principals recruited Trinity's (later Sharity) president), p. 19, ¶ 62 (alleging one principal place of business for all Aliera subsidiaries).

16.     The Amended Complaint summarizes the complete domination of Sharity by the insiders in paragraph 30, which reads:

> The 2018 Agreement allowed Aliera to use Trinity's nonprofit status to sell health care plans purporting to be HCSM plans, and granted Aliera control over and interest in the design of the plans, the Members' payments, the administration of the plans, the benefits paid, and the membership roster. Under the 2018 Agreement, Aliera was authorized to provide accounting staff, financial and membership reporting, and audit and tax filing support. The 2018 Agreement gave Aliera control over enrolling new members. It also gave Aliera the "exclusive ownership rights to the Membership Roster," and provided that Trinity was "not authorized to contact any members or use any information contained in the Membership Roster for any purpose without the prior written consent of Aliera." Aliera was granted authority in its sole discretion to "substitute any component of a Plan."

*Amended Complaint*, p. 9, ¶ 30 (emphasis added).

17.     Separately, the Sharity Trustee lacks standing under Georgia's RICO statute. Sharity suffers no injury as a result of any of the allegations in the Amended Complaint.

18.    The Sharity Trustee added a number of paragraphs to bolster the claims that Sharity, at the direction and control of the Insiders, was defrauding the Members, through the marketing and sale of Sharity's plans.  *Amended Complaint*, pp. 36-41, ¶¶ 159 – 182. *See Gentry v. Volkswagen of America, Inc.*, 238 Ga. App. 785, 790 (521 S.E.2d 13, 18) (Ga. 1999) ("Georgia RICO law requires a 'plaintiff [to] show that the injury suffered flowed directly from the predicate offense.'" (*quoting Maddox v. Southern Engineering Co.*, 231 Ga. App. 802 (500 S.E.2d 591) (1998)).

19.    The Sharity Trustee therefore lacks standing because, as the Amended Complaint alleges, Sharity was exclusively controlled by the Insiders who were the perpetrators of the wrongdoing and the injuries complained of were not suffered by Sharity but by the Members (creditors) who the Sharity Trustee does not have standing or statutory authority to assert these claims.  Accordingly, Count VIII must be dismissed.

### b.  **In Pari Delicto**

20.    Alternatively, but premised on the same facts, *in pari delicto* prevents the Sharity Trustee from a Georgia RICO action.

21.    "The doctrine of in pari delicto is an equitable doctrine that states 'a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing.'" *Id*. at 1152 (*quoting* Black's Law Dictionary 794 (7th ed. 1999)). "This common law defense "derives from the Latin, in pari delicto potior est conditio defendentis: 'In a case of equal or mutual fault . . . the position of the [defending] party . . . is the better one.'" *Edwards*, at 1152 (internal quotations and citation omitted).

22.    "The doctrine of in pari delicto is based on the policy that 'courts should not lend their good offices to mediating disputes among wrongdoers' and 'denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality.'" *Id*. (citation omitted).

23.     In pari delicto applies in this case, as "a debtor who was an active participant in activities giving rise to a RICO claim is barred by the doctrine of in pari delicto from asserting a RICO claim against his RICO co-conspirators, and the bankruptcy trustee is likewise barred from asserting such a claim against the co-conspirators." *Flatau v. Stewart (In re Stewart)*, 339 B.R. 524, 527 (M.D. Ga. 2006) (citation omitted).

24.     While *Stewart* relied on *Edwards* which deals with a Federal RICO claim, the District Court for the Middle District of Georgia found that it is equally applicable to the Georgia RICO which is modeled after the federal statute.  *Stewart*, 339 B.R. at 527.  *Accord In re First Leads & Mktg*, 2023 Bankr. LEXIS 1625, 2023 WL 4163478 (Bankr. N.D. Ga. June 23, 2023).

25.     The allegations in the Amended Complaint demonstrate that Sharity was not only an active participant but the entity which created, marketed, and sold the Sharity Plans to its members, the same "bad acts" that it is now alleging as the basis for its Georgia RICO claim. Accordingly, Count VIII should be dismissed with prejudice based upon *in pari delicto*.

### c. Sharity Trustee Fails to Allege Any Predicate Offenses Giving Rise to Claim Under Georgia's RICO Statute

26.     "The Georgia civil RICO statute prohibits a person from obtaining money or participating in an 'enterprise' through a 'pattern of racketeering activity.'" *Z-Space, Inc. v. Dantanna's CNN Center, LLC*, 349 Ga. App. 248, 252 (825 S.E. 2d 628, 634) (Ga. 2019) (*quoting* OCGA § 16-14-4 (a), (b)). "The term 'racketeering activity' means the commission of at least one of the enumerated types of crimes listed in the RICO statute, also known as predicate offenses. *Z-Space,* 349 Ga. App. at 252, 825 S.E. 2d at 634 (*quoting* OCGA § 16-14-3 (5) (A), (C); and *citing Jordan v. Tri County Ag*, 248 Ga. App. 661, 666 (5) (546 SE2d 528) (2001)). "As is relevant here, a 'pattern' means '[e]ngaging in at least two acts of racketeering activity.'" *Id.*  (*quoting* OCGA § 16-14-3 (4) (A) (alteration in original)).

### i.  Sharity suffers no Injury as a Result of the Marketing of Sharity's Plans as Either Valid Insurance or a Valid HCSM

27.     In paragraph 170 of the Amended Complain the Sharity Trustee summarizes the

crux of this RICO claim, and states:

> The Defendants furthered the scheme by committing, soliciting, coercing, and assisting the Insiders in the commission of insurance fraud by (1) aggressively marketing the Aliera/Sharity plans, (2) misrepresenting to the Members that these plans constituted valid HCSM plans, (3) violating various health care laws, consumer protection laws, and telemarketing laws, and (4) accepting extremely high commission payments with funds the Defendants knew should have been placed in Sharity's Sharebox account for the payment of Members' claims. The Defendants knew that the Sharity plans did not qualify as valid HCSM plans and knew that the Members' claims would not be covered under these plans. The Defendants violated numerous applicable federal laws due to their misrepresentation of the Sharity plans.

*Amended Complaint*, p. 38, ¶ 170.

28.     In addition to the conclusory position that the Defendants "knew" anything, Sharity

suffers no injury as a result of the marketing of Sharity's plans as either valid insurance or a valid

HCSM, any such claim, to the extent either is a predicate offense under OCGA § 16-14-3(5)(A).

would belong to Sharity's creditors (the members) not Sharity or the Sharity Trustee. *Gentry v.*

*Volkswagen of America, Inc.*, 238 Ga. App. 785, 790 (521 S.E.2d 13, 18) (Ga. 1999) ("Georgia

RICO law requires a 'plaintiff [to] show that the injury suffered flowed directly from the predicate

offense.'" (*quoting Maddox v. Southern Engineering Co.*, 231 Ga. App. 802 (500 S.E.2d 591)

(1998)).

29.     Accordingly, Count VIII should be dismissed with prejudice on the grounds of *in*

*pari delicto* and because Sharity fails to state a cause of action under Georgia's RICO statute,

where Sharity cannot show a nexus between any actions of the Defendants and an injury to Sharity

and the allegations do not evidence any predicate offenses under OCGA § 16-14-3(5)(A)

committed by the Defendant.

**III.   Counts VI should be Dismissed Because There is No Fiduciary Duty to Creditors under Delaware Law, The Trustee Cannot Bring Claims on Behalf of Creditors, and The Aiding and Abetting Breach of Fiduciary Duty Claims are Barred by In Pari <u>Delicto</u>**

30.    Couts VI fails as well because the Trustee lacks standing to bring such claims because the Debtors were exclusively controlled by the Insiders who were the perpetrators of the wrongdoing without any innocent shareholders. *Wiand*, 2024 U.S. App. LEXIS 6547 at *14-15 ("'a sham corporation created as the centerpiece of a Ponzi scheme,' the corporate entity could not have suffered any injury from its own fraudulent scheme, and Wiand, as receiver, lacks standing to maintain the tort claims.") (*citing Isaiah*, 960 F.3d at 1306–07).

31.    Further, for each of the Debtors that were Delaware entities, the entities did not owe any fiduciary duty to creditors. *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 94 (Del. 2007) ("When a solvent corporation is navigating in the zone of insolvency, the focus for Delaware directors does not change: directors must continue to discharge their fiduciary duties to the corporation and its shareholders by exercising their business judgment in the best interests of the corporation for the benefit of its shareholder owners.").

32.    Delaware law governs the internal affairs of The Aliera Companies, Inc., Advevo LLC, Ensurian Agency, LLC, and Tactic Edge Solutions LLC. *See* OCGA § 14-2-1505(c) (This chapter does not authorize this state to regulate the organization or internal affairs of a foreign corporation authorized to transact business in this state.") and *Mukamal v. Bakes,* 378 Fed. Appx. 890, 897 (11th Cir. 2010) (applying Fla. Stat. § 607.1505(3), which language was identical to OCGA § 14-2-1505(c) and finding Delaware law controls and there is no fiduciary duty owed to creditors); and OCGA § 14-11-701(a) ("The laws of the jurisdiction under which a foreign limited liability company is organized govern its organization and internal affairs and the liability of its

managers, members, and other owners, regardless of whether the foreign limited liability company

procured or should have procured a certificate of authority under this chapter.").

33.    Under Delaware law directors owe a fiduciary duty to the company not the

creditors.  *See Quadrant Structured Prods. Co., LTD. v. Vertin*, 115 A.3d 535, 546-47 (Del. Ch.

2015) ("There is no legally recognized 'zone of insolvency with implications for fiduciary duty

claims. The only transition point that affects fiduciary duty analysis is insolvency itself. ***

Regardless of whether a corporation is solvent or insolvent, creditors cannot bring direct claims

for breach of fiduciary duty. After a corporation becomes insolvent, creditors gain standing to

assert claims derivatively for breach of fiduciary duty. *** The directors of an insolvent firm do

not owe any particular duties to creditors. They continue to owe fiduciary duties to the corporation

for the benefit of all of its residual claimants, a category which now includes creditors. They do

not have a duty to shut down the insolvent firm and marshal its assets for distribution to creditors,

although they may make a business judgment that this is indeed the best route to maximize the

firm's value." (internal citations and footnotes omitted)).

34.    Further, while creditors are permitted to being derivative actions for the benefit of

a company, as stated above, the Trustee has no standing or authority under the Bankruptcy Code,

particularly under either 11 U.S.C. §§ 541 or 544(a), to pursue a cause of action against third

parties.  *Wiand*, 2024 U.S. App. LEXIS 6547 at *13-17; *Isaiah*, 960 F.3d at 1306; *E.F. Hutton &

Co.*, 901 F.2d at 985; *In re Harman*, 520 B.R. at 909-912; and *Palm Beach Finance Partners, L.P.*,

568 B.R. at 885-890.  *See also Post-Confirmation Comm. for Small Loans, Inc. v. Martin*, 1:13-

CV-195 (WLS), 2016 U.S. Dist. LEXIS 18788 at *14, 2016 WL 632482 (M.D. Ga. Feb. 17, 2016)

("Georgia and federal laws plainly show the Committee lacks standing to assert fraud claims

against the Martin Defendants on behalf of "Investors and other creditors" of the Debtors.")

35.     As for USA Benefits & Administrators LLC, the internal affairs are governed by New Mexico law, which does recognize a director's fiduciary duty to a companies' creditors. However, as stated above, the Trustee does not have standing or statutory authority to bring a claim on behalf of the Debtors' creditors. *Wiand*, 2024 U.S. App. LEXIS 6547 at *13-17, *Isaiah*, 960 F.3d at 1306; *E.F. Hutton & Co.*, 901 F.2d at 985; *In re Harman*, 520 B.R. at 909-912; *Palm Beach Finance Partners, L.P.*, 568 B.R. at 885-890.  *Martin*, 2016 WL 632482, at *4

36.     To the extent the Trustee is bringing the claim on behalf of the Debtors, the Amended Complaint still fails to adequately plead a basis for relief.

37.     Delaware recognizes a claim for aiding or abetting a breach of fiduciary duty but requires the plaintiff to allege:

> (i) the existence of a fiduciary relationship, (ii) a breach of the fiduciary's duty, (iii) knowing participation in that breach by the defendants, and (iv) damages proximately caused by the breach. An adequate pleading of knowing participation requires a pleading of scienter. The scienter requirement imposes a stringent standard. The plaintiff must demonstrate that the aider and abettor had actual or constructive knowledge that their conduct was legally improper.

*Jacobs v. Meghji*, 2020 Del. Ch. LEXIS 310 at 17-18 (Del. Ch. Oct. 8, 2020 (internal citations omitted).

38.     The Delaware Supreme Court has stated that "[k]nowing participation in a board's fiduciary breach requires that the third party act with the knowledge that the conduct advocated or assisted constitutes such a breach." *RBC Capital Mkts., LLC v. Jervis*, 129 A.3d 816, 861 (Del. 2015) (*quoting Malpiede v. Townson*, 780 A.2d 1075, 1097 (Del. 2001)). Where the Amended Complaint does not plainly allege the third party "conspired with the directors to breach a fiduciary duty, a court can infer a non-fiduciary's knowing participation only if a fiduciary breaches its duty in an inherently wrongful manner, and the plaintiff alleges specific facts from which that court could reasonably infer knowledge of the breach." *McGowan v. Ferro*, 2002 Del. Ch. LEXIS 3,

2002 WL 77712, at *2 (Del. Ch. Jan. 11, 2002) (emphasis in original) (internal quotation marks

omitted) (*quoting Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 392 (Del. Ch. 1999)).  But

"[c]onclusory statements that are devoid of factual details to support an allegation of knowing

participation will fall short of the pleading requirement needed to survive a Rule 12(b)(6) motion

to dismiss." *Id*. (internal quotation marks omitted) (*quoting Jackson Nat'l Life Ins. Co.*, 741 A.2d

392).

39.     Similarly, to the extent Georgia law applies to either the aiding and abetting a

breach of fiduciary duty, the Trustee must plead that:

> (1) through improper action or wrongful conduct and without privilege, the
> defendant acted to procure a breach of the primary wrongdoer's fiduciary
> duty to the plaintiff; (2) with knowledge that the primary wrongdoer owed
> the plaintiff a fiduciary duty, the defendant acted purposely and with malice
> and the intent to injure; (3) the defendant's wrongful conduct procured a
> breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's
> tortious conduct proximately caused damage to the plaintiff.

*Curry v. TD Ameritrade, Inc.*, 1:14-CV-1361-LMM, 2015 U.S. Dist. LEXIS 191684 at *41, 2015

WL 11251449 (N.D. Ga. June 30, 2015) (*citing Insight Technology, Inc. v. FreightCheck, L.L.C.,*

280 Ga. App. 19, 633 S.E.2d 373, 379 (Ga. Ct. App. 2006) (relying on O.C.G.A. § 51-12-30)).

40.     "The key to an aiding and abetting breach of fiduciary duty claim is inducing the

privilege holder [fiduciary] to improperly act." *Curry,* 2015 U.S. Dist. LEXIS 191684 at *41.

(internal quotations and citations omitted). Similarly, acting "purposely and with malice and the

intent to injure" requires intent to interfere with the fiduciary relationship. *Id.*

41.     The Amended Complaint is replete with unsupported conclusory allegations that

the Defendants knew or should have known that the Insiders were misusing Membership Funds.

These conclusory allegations are made despite the Trustee own allegations to the contrary, that (a)

the Debtor used the Defendants as a mere "middleman": "Aliera Used the Defendants as a

Middleman to Participate In and Further the Fraudulent Scheme." Amended Complaint, p. 14; (ii)

Debtors provided Defendants with "trainings and instructions for how the Defendants should sell the plans," and Defendants used "materials provided by Aliera." *Amended Complaint* pp. 15-16, ¶ 47-48.

42.     As the Trustee alleges, it was "**[t]he Insiders' goal** was to continually enroll as many members as possible in order to generate as much monthly revenue as possible[,]" not the other way around. *Amended Complaint*, p. 22 ¶ 73.

43.     The most the Trustee alleges in the Amended Complaint is that there were "clear signs" and "red flags," and as a result the Defendants therefore "knew or should have known" the products offered were not valid. *Amended Complaint*, p. 17-18, ¶¶ 56-57.

44.     Because the allegations do not show *Defendants* acted to induce an alleged breach of fiduciary duty—quite the opposite—"at their height," the allegations amount to Defendant's participation, which is insufficient. *Curry*, 2015 U.S. Dist. LEXIS 191684 at *42-43 (holding that the defendant knew or should have known or the "disregard of blatant red flags of wrong doing" were not enough to support an aiding and abetting breach of fiduciary duty claim.).

45.     Accordingly, Count VI should be dismissed with prejudice.

**IV.   Absent the Underlying Tort, There Can Be No Liability for Civil Conspiracy and Count VII Should be Dismissed with Prejudice**

46.     "A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means. To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort. Absent the underlying tort, there can be no liability for civil conspiracy." *Premier/Georgia Mgmt. Co., Inc. v. Realty Mgmt. Corp.*, 613 S.E.2d 112, 118 (Ga. Ct. App. 2005).

47.     "To recover damages based on a civil conspiracy, a plaintiff must show that two or more persons combined either to do some act which is a tort, or else to do some lawful act by

16

methods which constitute a tort. . . . [t]he conspiracy of itself furnishes no cause of action.  The gist of the action . . . is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage. Absent the underlying tort, there can be no liability for civil conspiracy." *Pullar v. Gen. MD Group*, 1:12-CV-4063-TWT, 2013 U.S. Dist. LEXIS 133024 at *14-15, 2013 WL 5284684 (N.D. Ga. Sept. 17, 2013) (internal citations and quotation marks omitted); *Cook v. Robinson*, 116 S.E.2d 742, 744–45 (Ga. 1960) ("Where civil liability for a conspiracy is sought to be imposed, the conspiracy itself furnishes no cause of action. The gist of the action, if a cause of action exists, is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage.").

48.     As detailed above, the Trustee cannot state claim for the underlying breach of fiduciary duty that is the basis of Count VII.  Without the underlying tort, there is no claim for conspiracy. *Pullar*, 2013 U.S. Dist. LEXIS 133024 at *14-15.

**V.   The Trustee Lacks Standing to Bring Voidable Transaction Claims Having Failed to Plead Any Debtor Entity as The Transferor and Counts I through V Should be Dismissed with Prejudice.**

49.     In Counts I through V, the Trustee seeks to avoid, recover, and "preserve" allegedly voidable transfers under Georgia's Uniform Voidable Transactions Act.

50.     The Amended Complaint now alleges that "Aliera's principals were causing Aliera to use the Members' funds that should have been placed in Unity/Sharity's Sharebox account to pay administrative costs, including unreasonably high commission payments to the Defendants and funds to support the lavish lifestyles of Aliera's principals." *Amended Complaint*, pp. 2-3, ¶ 3.

51.     This refutes a basic element of any voidable transfer claim, that the transfer be of an interest in property of the Debtor.  *See* OCGA § 18-2-71(2) (" 'Asset' means property of a debtor…") and (16) (" 'Transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an **asset or an interest in an asset** and

includes payment of money, release, lease, and creation of a lien or other encumbrance.")
(emphasis added).

52.     The avoidance actions are brought solely by the Aliera Trustee, meaning the
transfers had to have been assets or interests in assets of one of the Debtors in this bankruptcy case,
which is what the Trustee alleges: "Aliera" is alleged to have been the transferor. *See Amended
Complaint*, pp. 27-31, ¶¶ 100-129.   "Aliera" is a defined term in the Amended Complaint for
"Debtor The Aliera Companies, Inc." *Amended Complaint*, p. 3, ¶ 4.

53.     The Trustee alleges Aliera "changed its name from Aliera Healthcare, Inc. to The
Aliera Companies, Inc. in 2019." Amended Complaint, p. 17, ¶ 57.  We know the date of the name
change was July 1, 2019, as stated by the Debtor in the *Modified Combined Disclosure Statement
and Plan of Liquidation filed Jointly by the Debtors and the Official Committee of Unsecured
Creditors* [Case No. 21-11548-TMH, ECF No. 566, p. 9, confirmed ECF No. 576].

54.     The transfers the Trustee seeks to avoid, in Exhibit B to the Amended Complaint,
range from June 2018, before the Trustee alleges Aliera changed its name, to June 2021, after the
Trustee alleges Aliera changed its name and "created the subsidiaries." *Amended Complaint*, p.
19, ¶ 62.  Exhibit B does not identify any account information regarding the institution, the last
four of the account number, or in whose name the account is titled.

55.     Furthermore, in addition to the allegation in ¶ 3 referenced above, the remaining
allegations in Amended Complaint conflict with and dispute that Aliera ever had an interest in the
funds at issue in Counts I through V. *See Amended Complaint*, p. 9, ¶ 30 ("The 2018 Agreement
… granted Aliera control over and interest in the design of the plans, the Member's payments, the
administration of the plans, the benefits paid, and the membership roster…[and] authorized
[Aliera] to provide accounting staff, financial and membership reporting, and audit and tax filing

support."); p. 10, ¶ 31 ("The 2018 Agreement provided that *all Member "contributions" payments were to be made directly to Aliera*, which then allocated 30-40% (depending on the plan) of every payment to commissions, and also provided that Aliera would be paid substantial additional administrative fees. Only a small fraction of the amount of a member contribution (about 16% of the amount paid under most of the plans) was actually to be placed into a Trinity 'Sharebox' account for the payment of claims.") (emphasis in original); p. 20, ¶ 65 ("Pursuant to both the Subsidiary Agreements and the 2018 Agreement, from the time Trinity was created until early 2021, Aliera was granted control over and interest in payments made by the Members, the costs deducted from the payments, the amounts deposited into the Trinity account for payment of medical claims, and the amount paid out of Trinity's Sharebox account for the Members' medical expenses.").

56.     It is therefore unclear from the pleadings what entity(ies) made transfers to Defendants at what times to determine whether the transferor entity was in fact a Debtor such that the Trustee would pass the initial hurdle of standing to even allege voidable transaction claims. For example, if at any time the transferor entity was Aliera Healthcare, Inc., the Trustee has not alleged a basis to conclude that property of former Aliera Healthcare, Inc. should constitute property of the estate of the Debtors. The same is true if the transferor entity was Ensurian, which according to the Amended Complaint did not exist before 2019, and there is no allegation of a continuing entity. *Amended Complaint*, p. 19, ¶ 62 and Ex. A. Furthermore, regardless of the entity that Transferred the funds the Amended Complaint does not sufficiently allege that any of the Debtors had an interest in the funds transferred because Member Contribution to Sharity (or Trinity) were paid to Aliera, who allocated the funds according to the respective agreements,

however, Aliera acting as a servicing agent for the Member Contributions to Sharity (or Trinity) does not give Aliera a property interest in those funds.

57.     The Amended Complaint makes general conclusory statements that such a creditor exists but does not specifically identify any creditor on which the Trustee purports to rely.  On this ground alone Count I-V must be dismissed.

58.     Because the Trustee did not sufficiently plead which Debtor entity in fact had an interest in the funds purportedly transferred, Count I-V should be dismissed.  And, based upon the allegations in paragraphs 3, 30, 31, and 65 the Trustee cannot establish that the Debtor entities ever had an interest in the funds and the Counts should be dismissed with prejudice.

59.     Alternatively, and at minimum, the Trustee should be ordered to provide a more definite pleading of Counts I through V to adequately allege the transferor entity(ies) and the interest in the funds transferred pursuant to Federal Rule of Civil Procedure 12(e),[3] made applicable by Federal Rule of Bankruptcy Procedure 7012(b).

**VI.     <u>The Trustees Have Not Pled the Existence of a Ponzi Scheme.</u>**

60.     The Trustees allege, without any supporting allegations, that Aliera and Sharity were a Ponzi scheme or, at least, "essentially a Ponzi scheme[.]" *Amended Complaint*, p. 17 and 24, ¶¶ 56 and 81.

61.     The Trustees have not adequately alleged the existence of a Ponzi scheme.[4]

---

[3] Federal Rule of Civil Procedure 12(e) provides as follows:
> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Fed. R. Civ. P. 12(e).

[4] Defendants will, of course, defend every allegation on its merits, but is limiting its arguments to the scope of the Court's review on a motion to dismiss.

62.    "A Ponzi scheme operates by using new investors' funds to pay old investors to create the impression that the scheme is generating profits." *Wiand v. Lee*, 753 F.3d 1194, 1197, n.1 (11th Cir. 2014).

63.    The Trustees allege "[t]he Debtors were formed to provide services to HCSMs, including Sharity. After disputes with other HCSMs, Sharity became the primary client and mechanism for the Insiders and the Defendants to extract cash from the Members." *Amended Complaint*, p. 6, ¶ 18. The Trustees allege "the Members paid approximately $363,000,000 in monthly member fees and application fees for their Trinity health care plans." *Amended Complaint*, p. 18, ¶ 60. "Sharity's professed raison d'être" was "to pay the Members' requests for sharing of medical expenses." *Amended Complaint*, p. 19, ¶ 65. The Trustees allege, however, "Aliera or its Subsidiaries were retaining up to 60% of the Members' fees" and "Sharity also received approximately 10% of the Members' payments to cover expenses," while "[h]ealth insurers are required to pay at least 80% of premiums received on member claims for ACA-compliant plans under federal law." *Amended Complaint*, p. 20, ¶¶ 69-70.

64.    The nature of the businesses required the pooling of the Members' fees from which Members could request their medical expenses be paid. The business was not an investment, but instead pooling resources to pay medical expenses. The business, by definition, required the constant growth of the Membership to support the Members' share requests.

65.    The Trustees have not, and, it is submitted, cannot allege the existence of a Ponzi scheme. At minimum, the Trustees should be ordered to provide a more definite pleading pursuant to Federal Rule of Civil Procedure 12(e), made applicable by Federal Rule of Bankruptcy Procedure 7012(b).

**VII.    <u>The Trustees Have Not Pled a Basis for The Imposition of Punitive Damages</u>.**

21

66. The Trustees request the Court to "[e]nter judgment against the Defendants for all actual and punitive damages." *Amended Complaint*, p. 41.

67. Under Georgia law, "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). "Punitive damages shall be awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant." *Id.* § 51-12-5.1(c).

68. For the reasons stated above, the Trustees have not alleged with any specificity Defendants' knowledge of the Insiders' "massive scheme," *Amended Complaint*, p. 2, ¶ 1, but instead that Defendants "should have known", "never inquired," and ignored "clear signs" and "red flags" that Aliera's conduct was not legitimate. *Amended Complaint*, p. 17-18, ¶¶ 56-57. Nor have the Trustees alleged any way Defendants could or should have known about the internal workings of one of its many vendors.

**WHEREFORE**, Defendants respectfully requests that this Honorable Court enter an order (1) granting this Motion, (ii) dismissing the Amended Complaint with prejudice, (iii) alternatively, with respect to Counts I-V only, if dismissal is not warranted, then requiring the Plaintiffs to provide a more definite statement; and (iv) granting the Defendants such other and further relief as the Court deems proper.

Dated: April 24, 2024
Boca Raton, Florida

FURR AND COHEN, P.A.
2255 Glades Road, Suite 419A
Boca Raton, FL 33431
(561) 395-0500/Fax: 561-338-7532

By: */s/ Robert C. Furr*　　　　　　
Robert C. Furr
Georgia Bar No. 280975
Email: rfurr@furrcohen.com
*Attorneys for Defendants*


## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing has been served on all parties

registered with CM/ECF to receive electronic notice in this case on this 24th day of April 2024.


BY: ___*/s/ Robert C. Furr*____
Robert C. Furr, Esq.